PEOPLE ex rel. TAYLOR v. YORK et al., Police Com'rs.

(Supreme Court, Appellate Division, First Department.  March 8, 1901.)

**1. MUNICIPAL CORPORATIONS—POLICEMEN—DISMISSAL—EVIDENCE.**

A policeman left his post and went home, asking a man to go to the station house and report him sick, and remained three days, claiming to be sick, though about four hours after he came home his brother went to the station and reported that they could not get him to go to work, and his mother said she was afraid he ought to have been there, and so sent her other son down.  When called on by his captain, he was found in a fit condition to go back, and immediately went to work, and explained his not sending for the police surgeon by saying that he was afraid of him. *Held*, that the decision of the police commissioners that he was absent without leave and that he should be dismissed was justified.

**2. SAME—POLICE RULES.**

Under New York police rule 151, providing that, whenever any member of the force is absent on account of sickness, if the member shall not remain at his residence, so as to be visited at the option of the surgeon, he shall be liable to charges, a policeman is not justified in remaining at his home longer than he is actually sick, and when able for duty he should so report, though he has not been visited by the police surgeon.

Certiorari by the people, on relation of William A. Taylor, against Bernard J. York and others, police commissioners of the city of New York, to review the dismissal of relator from the police force.  Dismissed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and McLAUGHLIN, JJ.

Roger Foster, for relator.

Terence Farley, for respondents.

O'BRIEN, J.  On November 12, 1896, the relator was tried upon four charges.  Thereafter, on December 17, 1896, he was tried upon a fifth charge, and at a meeting of the commissioners held December 21, 1896, was adjudged guilty of this charge, and dismissed from the force.  Subsequently, early in January, 1897, the commissioners passed resolutions finding the relator guilty of the first four charges, and again formally dismissed him.  Upon the merits, affecting the right of the commissioners to dismiss the relator, it is only necessary to state and discuss the evidence presented at the trial upon the fifth charge.  That, in our opinion, being sufficient, we need not refer to the testimony given upon the trial of the other four charges, or to the arguments based upon such testimony.  The two trials were quite distinct, and it in no way appears that the relator was prejudiced at the second trial by what took place at the first.  On the contrary, it appears that the commissioners reached their conclusion as to the fifth charge before they had determined the issues presented as to the others.  The fifth charge referred to was that the relator was absent without leave from 1:25 p. m. roll call on Wednesday, December 9, 1896, and did not report for duty until 5:30 p. m. Saturday, December 12, 1896.  At the trial the relator admitted that he was absent for three days, but testified that while on his post he was taken sick and

thought it best to go home, and told a young man on the corner to go to the station house and report him sick; that the young man, whose name was Jackson, was out of town then, but could be procured in a week's time; that Jackson came back to his house and said he had told a policeman who was going to the station house to report the illness, and, "of course, I waited for the police doctor to come." The captain testified that the relator did not return from patrol, and his brother came about half past five and said, "We can't get him to go to work;" that the relator was absent three days, and after consulting with the inspector he went to see him, and found nothing the matter with him; that, when asked what was the trouble, the relator said, "Little pains across here," and, when asked why he did not report sick, he said he did not like the doctor; that the relator, as the result of such visit, went to work that evening; that he had not reported to the doctor. The relator said he told the captain that he was sick, and did not want to go on duty until the police surgeon ordered him. The question was then asked, "Captain, of course it was his duty to have taken active steps to see he was reported sick at the station house?" And the captain answered, "Yes, sir; he lives in 121st street, and he could have come in the station house and reported himself sick without going to 121st street." The captain further testified that when he called upon him the relator was in a fit condition to go back, and his mother said she was afraid he ought to have been there, and therefore had sent her other son down; that the relator said he was afraid of the police surgeon. The relator testified that he did not remember saying that he was afraid of the surgeon, because he did not pay particular attention to the conversation between the captain and himself. We think that the natural inference from the testimony is that the relator was remiss in remaining from his duty for three consecutive days. The fact that the trial proceeded without Jackson's appearance as a witness was not important; nor should undue weight be given to the fact that leading questions were asked, and irresponsive answers given, because, regardless of these, on relator's own showing he furnished no good excuse for his absence. The relator principally relies for an excuse for his prolonged absence upon rule 151,—that, "whenever any member of the force is absent on account of sickness, * * * if the member shall not remain at his residence, so as to be visited at the option of the surgeon, * * * he shall be liable to charges." But, if we assume that the relator was justified in leaving his post as he did, it is evident that this rule could extend only over the period during which he was actually sick. The surgeon, by the rule, might elect not to call; and, if he did not do so during the member's actual illness, then the member, of course, should report for duty when able. This must be true, since we cannot suppose that the rule was intended unnecessarily to weaken the force by reducing the number of available men. The relator, it is true, says that he was sick when the captain called; but this is denied by the captain, and it appears that the relator at once went on duty. Furthermore, there is the uncontradicted testimony that the mother and brother of the relator sought to have him return to work. We think that there is no reason for disturbing the conclusion of the commis-

sioners in dismissing the relator upon the charge of absence from duty without leave for the time stated.

The writ should therefore be dismissed, and the proceedings affirmed, with costs. All concur.